IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HORACE SELLERS,                    )
                                   )
          Plaintiff,               )
                                   )
v.                                 )          CIVIL ACTION NO. 13-00098-CG-N
                                   )
BOLTTECH MANNINGS, INC., and       )
ALLAN LONG,                        )
                                   )
          Defendants.              )

REPORT AND RECOMMENDATION

This action is before the Court on a motion to remand (doc. 7) filed by the

plaintiff, Horace Sellers, which has been referred to the undersigned pursuant to 28

U.S.C. § 636 (b)(1)(B) for a report and recommendation.  Upon consideration of the

motion, the response in opposition thereto (doc. 11) filed by Bolttech Manning, Inc.

("Bolttech"), a defendant herein, and all other pertinent portions of the record , it is

recommended that the motion to remand be  **DENIED**.[1]

I.      Background.

In his complaint, filed on November 8, 2012 in the Mobile County Circuit Court,

Horace Sellers, the plaintiff herein, seeks damages for injuries he sustained when, while

working as a welder at VT Halter Shipbuilding's shipyard in Moss Point, Mississippi,

was injured by being electrocuted.  (Doc. 1-1 at p. 19, ¶¶ 8-11).  According to the

---

[1] Plaintiff did not reply as permitted by the Order dated March 22, 2013 (doc. 8) nor did he seek an extension of time within which to reply.

plaintiff, he was electrocuted when he touched a 65 KVA 6 WAT Heat Console provided to VT Halter by defendant Bolttech just hours before plaintiff's electrocution.  (Doc. 7-1 at 2).

In his complaint, as amended prior to removal, Sellers specifically names Bolttech Manning, Inc. and Allan Long, a resident defendant, as well as numerous fictitious parties identified as "those persons, firms, associations, partnerships, corporations or other entities who owned, leased or otherwise executed control over the ceramic heater leased to VT Halter Marine in June of 1012."  (Doc. 7, Exhibit 1-First Amended Complaint).   Plaintiff perfected service on Allan Long on February 1, 2013 and on Bolttech on February 4, 2013.

On March 1, 2013, Bolttech removed this action from the Circuit Court of Mobile County, Alabama, pursuant to 28 U.S.C. §§ 1441 and 1446(b)(1).  Bolttech alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the properly joined parties are diverse and the amount in controversy exceeds the jurisdictional requirements.  (Doc. 1 at ¶¶ 23-25, 26-42).  Bolttech argues, in sum, that the citizenship of defendant Allan Long must be disregarded because he has been fraudulently joined in this action in an attempt to defeat diversity jurisdiction.  (*Id*.)

On March 20, 2013, Sellers filed a motion to remand (doc. 7) on the grounds, in sum, that  "Bolttech has not met its burden establishing that the parties are diverse and that the amount in controversy exceeds $75,000.00."  (Doc. 7-1 at 3).  Sellers argues, with respect to the alleged fraudulent joinder, that "[d]espite Defendant Long's assertions, he was still an employee of the Defendant, with managerial responsibilities, at

the time of Plaintiff's injury [and] [i]t certainly could be possible that he was somehow involved in the facts alleged in the Plaintiff's complaint."  (Doc. 7-1 at 8).  Sellers further argues, with respect to the fictitious defendants, that "[u]nserved resident fictitious defendants may not be ignored on removal if the complaint's allegations are directed at all defendants jointly without elaboration as to the particular role of any one defendant." (Doc. 7-1 at 10).  Finally, with respect to the amount in controversy, Sellers argues that "Plaintiff is presently back at work [which] greatly affects any future lost wages [and] limits the Plaintiff, at the present time, to recover for: past medicals [i.e., $11,687.00], past lost wages and pain and suffering" and, therefore, there is doubt about the amount in controversy which should be resolved in favor of remand.  (Doc. 7-1 at 14).  The motion has been fully briefed and is now ready for the Court's consideration.

II.     Standard of Review.

"In a removal action, the party asserting jurisdiction has the burden of establishing proof of jurisdiction by a ***preponderance of the evidence***."  Wiltew v. Parker, 2009 WL 3615041, * 2 (S.D. Ala. Oct. 30, 2009)(emphasis added), *citing* McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178 (1936); Lowery v. Alabama Power Co., 483 F.3d 1184, 1210 (11th Cir. 2007), *cert. denied sub nom* Hanna Steel Corp. v. Lowery, --- U.S. ----, 128 S.Ct. 2877 (2008).  In a removal action, the burden is upon the defendant.  *Id.*, *citing* Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).  *See also*, Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008) ("A removing defendant bears the burden of proving proper federal jurisdiction [and] doubts about the propriety of federal jurisdiction should be resolved in

favor of remand to state court.") (citation omitted); <u>Friedman v. New York Life Ins. Co.</u>, 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted). In addition, "[b]ecause removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand." <u>Holloway v. Morrow</u>, 2008 WL 401305, * 2 (S.D. Ala. Feb. 11, 2008), *citing* <u>University of South Alabama v. American Tobacco Co.</u>, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction). *See also* <u>Russell Corp. v. American Home Assur, Co.</u>, 264 F.3d 1040, 1050 (11th Cir. 2001)("Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand."). "Thus, under § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff-be it the initial complaint or a later received paper-and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." <u>Lowery</u>, 483 F.3d at 1213.

"Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." <u>Pretka v. Kolter City Plaza, II, Inc.</u>,  608 F.3d 744, 752 (11th Cir. 2010).   A removing defendant need only show that "the amount in controversy ***more likely than not*** exceeds the . . . jurisdictional requirement." <u>Roe v.</u>

Michelin North America, Inc., 613 F.3d 1058, 1061 (11th Cir. 2010)(emphasis added). A removing defendant is not required  "to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Renfroe v. Allstate Property and Cas. Ins. Co.,  2010 WL 4117038, * 2 (S.D. Ala., Sept. 23, 2010), *quoting*  Pretka, 608 F.3d at 754. "When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement [and] [i]f the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." Beasley v. Fred's Inc., 2008 WL 899249 (S.D. Ala. Mar. 31, 2008), *quoting* Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001).  In addition, the Eleventh Circuit has now made it clear that "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." Roe, 613 F.3d at 1062.

III.    Analysis.

A.    Fictitious Defendants.

Sellers' contention that Bolttech bears the burden to prove that the fictitious defendants are nonresidents who do not destroy diversity is without merit.  28 U.S.C. § 1441(b)(1) provides that, "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."  This sentence was added to § 1441 by amendment in 1988 pursuant to §1016(a) of the Judicial Improvements and Access to

Justice Act.  *See* Pub.L. No. 100–702, 102 Stat. 4669 (1988); <u>Wilson v. General Motors Corp.</u>, 888 F.2d 779, 782 n. 3 (11th Cir. 1989). Consequently, the cases relied on by Sellers, which pre-date this amendment, are inapplicable. *See*, <u>Walker v. CSX Transp. Inc.</u>, 650 F.3d 1392, 1396 n. 11 (11th Cir. 2011)(" Moreover, that the fictitious defendants were likely Georgia citizens did not destroy complete diversity because § 1441(a) requires that fictitious "named" parties be disregarded for purposes of diversity jurisdiction.").  The citizenship of the fictitious parties charged in Sellers' complaint must, therefore, be disregarded.

     B.     Fraudulent Joinder.

     Defendant Allan Long is citizen of Alabama, as is the plaintiff.  Consequently, diversity does not exist in this case *unless* there is clear and convincing evidence before the court that Long has been fraudulently joined.  Fraudulent joinder occurs when a plaintiff attempts to prevent removal by joining a defendant who shares the same state citizenship as the plaintiff by filing a frivolous or otherwise illegitimate claim against a non-diverse defendant.  <u>Atwood v. Weyerhaeuser USA, Inc.</u>, 2010 WL 749337, *8 (S.D. Ala., Feb. 26, 2010), *citing* <u>Fitts v. Griffin</u>, 304 F.Supp.2d 1337 (M.D. Ala. 2004); <u>Tedder v. F.M.C. Corp.</u>, 590 F.2d 115, 117 (5th Cir. 1979), and <u>Thomas v. Jim Walter Homes, Inc.</u>, 918 F.Supp. 1498 (M.D. Ala. 1996).  When making a determination on whether complete diversity exists, courts may indeed disregard the citizenship of fraudulently joined defendants.  <u>Fitts</u>, 304 F.Supp.2d at 1337.  In <u>Henderson v. Washington National Insurance Co.</u>, 454 F.3d 1278 (11th Cir. 2006), the Eleventh Circuit set forth the following standard of review with regard to fraudulent joinder claims:

6

An action in state court may be removed to federal court when the federal courts have diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed. *See* Lincoln Prop. Co. v. Roche, [546 U.S. 81] (2005) (*citing* 28 U.S.C. § 1441(b)). Such a remand is the necessary corollary of a federal district court's diversity jurisdiction, which requires complete diversity of citizenship.

When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a "fraudulent joinder," *see* Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997), and a federal court may appropriately assert its removal diversity jurisdiction over the case. A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id*. The defendant must make such a showing by clear and convincing evidence. *See* Parks v. New York Times Co., 308 F .2d 474, 478 (5th Cir. 1962).

454 F.3d at 1281.

The burden of proving fraudulent joinder by clear and convincing evidence is a heavy one that requires the court to evaluate the parties' factual allegations and submissions in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). Also, the court must make "these determinations based on the plaintiff's pleadings at the time of removal" but may "consider affidavits and deposition transcripts submitted by the parties." *Id.*; Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

The analysis used to resolve a claim of fraudulent joinder is similar to that applied

to a motion for summary judgment under Fed.R .Civ.P. 56(b).  Crowe, 113 F.3d at 1538.

However, "[w]hile 'the proceeding appropriate for resolving a claim of fraudulent joinder

is similar to that used for ruling on a motion for summary judgment under Fed. R.Civ.P.

56(b),' ... the jurisdictional inquiry 'must not subsume substantive determination.' " Id.

Therefore, "[w]hen determining whether a resident defendant has been fraudulently

joined, 'federal courts are not to weigh the merits of a plaintiff's claim beyond

determining whether it is an arguable one under state law'." Clay v. Brown & Williamson

Tobacco Corp., 77 F.Supp.2d 1220, 1223 (M.D.Ala.1999)(*quoting* Pacheco de Perez v.

AT & T Co., 139 F.3d 1368, 1380–81 (11th Cir. 1998)); *see* Triggs v. John Crump

Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)("The plaintiff need not have a

winning case against the allegedly fraudulent defendant; he need only have a ***possibility***

of stating a valid cause of action in order for the joinder to be legitimate.")(emphasis in

original).

        In order to defeat Seller's motion for remand, Bolttech must show by clear and

convincing evidence that, viewing the evidence in the light most favorable to Sellers, and

resolving all uncertainties of state law in Seller's favor, there is no possibility that the

state circuit court could find that the complaint states a claim for negligence or

wantonness against Allan Long, a resident defendant.  The claim against Long is

predicated on a contention set forth in "Statement of Facts" section of Sellers' Complaint,

namely that "[o]n or about June 21, 2012, Defendant Long, while working for Defendant

Bolttech Mannings at their facility in Theodore, Alabama, shipped a defective ceramic

heater to VT Halter Marine."  (Doc. 1-1 at p. 19, ¶ 7).   Sellers then asserts the following

basis for his negligence/wantonness claims[2] against all the defendants, including Long:

> a.     Failing to provide VT Halter Marine with a reasonably safe product;
>
> b.     Failing to properly inspect, maintain and/or repair the ceramic heater before leasing it to VT Halter Marine;
>
> c.     Failing to provide and/or conduct adequate and reasonable maintenance and safety inspections to their products before leasing them to customers;
>
> d.     Failing to adhere to applicable electrical codes and standards and safety codes and standards;
>
> e.     Failing to adequately maintain the workplace in a reasonably safe condition;
>
> f.     Failing to provide adequate training and supervision to its employees relative to electrical safety, electrical codes and standard, safety codes and standards.

(Doc. 1-1 at pp. 21-22, ¶ 15).

---

2 "Wantonness is 'the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result'."  Scharff v. Wyeth , 2012 WL 3149248, * 2 (M.D. Ala., Aug.1, 2012), *quoting* Ex parte Essary, 992 So.2d 5. 9 (Ala. 2007). "The standard of likely or probable injury is essential in evaluating wantonness claims [and] [e]ach distinct act or omission must be likely or probable to result in injury."  *Id. See also* Ray v. Ford Motor Co., 2011 WL 6749034, *2 (M.D. Ala., Dec. 23, 2011), *citing* Edmonson v. Cooper Cameron Corp., 374 F.Supp.2d 1103, 1106 (M.D.Ala.2005) ( "[u]nder Alabama law, there are four elements to establish a case of negligence or wantonness: (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury.");  Ex parte Essary, 992 So.2d 5, 12 (Ala.2007) (wantonness is "reckless indifference to a known danger likely to inflict injury").  *See also* Agostinelli v. Fifth Third Bank, 2011 WL 2119099, *5 (S.D. Ala., May 11, 2011)("to state a negligence claim under Alabama law, the plaintiff must prove duty to a foreseeable plaintiff, breach of that duty, proximate causation and damage or injury [and] [w]antonness involves the 'conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result'.").

Defendant Long has submitted an affidavit identifying himself as the "territory manager for Bolttech Mannings, Inc." and attesting that "I did not provide the product at issue to VT Halter Marine." (Doc. 1-4 at ¶¶ 1, 3). Long further attests that "my job duties and responsibilities during this time did not include inspecting, maintaining and/or repairing the ceramic heater in question [and] I have to my knowledge never inspected, maintained or repaired the ceramic heater in question, nor was I in charge of doing so, supposed to have done so, or even attempted to do so." (*Id.*) Long also asserts that, "[a]s an employee of Bolttech, I do not sell, make or provide customers any of my own products [and] I did not build or construct any part of the ceramic heater in question." (*Id.* at ¶¶ 4-5). Long further asserts that he is not required by his job, and has never, trained or supervised any employee of Bolttech or anyone else regarding electrical safety and/or either electrical or safety codes and standards. (*Id.* at ¶ 6). Finally, Long attests that he had no knowledge that the ceramic heater in question was defective and did not either ship it to VT Halter Marine or handle it in any way. (*Id.* at ¶ 7).

Sellers does not challenge Long's contentions. Rather, Sellers argues that "[d]espite Defendant Long's assertions, he was still an employee of the Defendant, with managerial responsibilities, at the time of Plaintiff's injury [and] [i]t certainly could be possible that he was somehow involved in the facts alleged in the Plaintiff's complaint." (Doc. 7-1 at 8). In support of this argument, Sellers relies on the principle that, "[u]nder Alabama law, '[a] corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort'." (Id. at 7, *quoting* Ex parte McInnis, 820 So. 2d 795, 798-99 (Ala. 2001) *cert. denied*, 535 U.S. 1077 (2002),

(*quoting* <u>Sieber v. Campbell</u>, 810 So.2d 641, 645 (Ala. 2001)).  *See also* <u>Atwood</u>, 2010 WL 749337 at *9 ("[I]n order to find an employee of a corporation personally liable for the negligent acts of the corporation 'there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act'."). "[U]nder Alabama law, the determination of whether an individual has personally participated in a tort is made on a case-by-case basis upon an evaluation of the evidence of the actual activity of the employee defendant." <u>Atwood</u>, 2010 WL 749337 at *5, *citing* <u>Yarbrough v. Ledford</u>, 771 So.2d 1051 (Ala.Civ.App.2000), and <u>Rice v. Merritt</u>, 549 So.2d 508 (Ala.Civ.App.1989).

Sellers concedes that the case at hand is governed by the principles set forth in <u>Legg v. Wyeth</u>, 428 F.3d 1317 (11th Cir. 2005).  (Doc. 7-1 at 7).  In <u>Legg</u>, the Eleventh Circuit held that, in order for the District Court to "resolve all questions of fact ... in favor of the plaintiff," . . . "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor [and] [w]hen the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint."  428 F.3d at 1323.  In <u>Legg</u>, plaintiffs attempted to assert claims against not only the pharmaceutical company that produced and sold the drug at issue but also against non-diverse company sales representatives, who swore under oath that they never sold or promoted the drug. The <u>Legg</u> plaintiffs never disputed the non-diverse defendants' sworn statements and, thus were held to have presented no evidence that the representatives had anything to do with the drug at issue.  428 F.3d at 1323-24.  The Eleventh Circuit concluded "there is

no reasonable possibility that Plaintiffs can establish a cause of action against [the non-diverse individual defendants] under Alabama law" and held that, "[g]iven that the record supports Wyeth's allegation that these sales representatives were fraudulently joined by the Plaintiffs, there was nothing "improvident" or unreasonable in Wyeth's effort to remove this case to federal court."  428 F.3d at 1323-1325.

Sellers has failed to dispute any aspect of Long's sworn statement establishing that he had nothing to do with the ceramic heater at issue in this litigation.  Rather, Sellers makes the assumption that Long was "somehow involved" based on his position in the company.  Moreover, breach of duty is an essential element of both negligence and wantonness; however, Plaintiff does not allege that Long owed a duty.  Viewing the evidence in the light most favorable to the plaintiff, the undersigned concludes that there is no reasonable possibility that Sellers can establish a cause of action for negligence or wantonness against Long under Alabama law.  Consequently, the record supports Bolttech's contention that Long was fraudulently joined by Sellers.  As such, Long's citizenship shall be disregarded for purposes of removal.

C.    Amount in Controversy.

Sellers next challenges Bolttech's removal of this case on the grounds that the amount in controversy does not exceed $75,000.00.  (Doc. 7-1 at 12).  "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010), quoting Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001).

"When the complaint does not claim a specific amount of damages, removal from state court is [jurisdictionally] proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Pretka, 608 F.3d at 754, *quoting* Williams, 269 F.3d at 1319.  "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." (*Id.*). "The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard." Pretka, 608 F.3d at 755.  This Court is permitted "to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable."  Roe v. Michelin North America, Inc., 613 F.3d 1058, 1061-62 (11th Cir.  2010).  According to the Eleventh Circuit, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements."  (*Id.* at 1062).

In his complaint, Sellers alleges that, as a result of the alleged electrocution, he was "caused to incur medical bills" and will continue to incur such bills in the future, (doc. 1-1at ¶ 12(c)), was "caused to suffer physical pain, suffering mental anguish and will endure the same in the future," (*id.* at ¶ 12(a)), was "caused to suffer loss of enjoyment of life," (*id.* at ¶ 12(b)), was caused to sustain "permanent scarring and disfigurement," (*id.* at 11(b)) and was caused to suffer "severe neck pain," (*id.* at 11(c)). Sellers seeks compensatory damages for the medical expenses he has incurred for the care and treatment of his injuries. (*Id.* at ¶ 12(c)).  Sellers does not dispute that the

charges from Alabama Orthopaedic Clinic ("AOC") total $11,687.00 as of December 10, 2012.[3] (Doc. 1-6, AOC Medical Records). The $11,687.00 figure does not include any of the bills from the other doctors and/or medical professionals who have treated Sellers for his injuries resulting from the subject electrocution, including Cypress Care Prescription, MSC Group, Inc., Singing River Health System, Springhill Hospitals, Inc., Align Networks, Inc., Medworks, Michelle House, CRNA, Robert C. Calin, M.D., and Singing River Radiology Group. (Doc. 1-7). Sellers does not dispute that these additional medical services and/or treatments have an estimated total billed value of $16,462.39 through January 21, 2013. (*Id*.; *see also* Doc. 1 at n. 4).

Future medical bills must be taken into account in ascertaining whether the amount in controversy requirement has been satisfied because Sellers expressly seeks compensatory damages for the medical expenses he "will incur … in the future." (Doc. 1-1 at ¶ 12(c)). Sellers is currently in rehabilitation, and does not dispute that additional rehabilitation will be required in the future. Furthermore, Sellers' counsel has indicated that he is having Sellers referred to a neurologist or a neurosurgeon, (doc. 1-5), which likely will result in added future medical costs. Sellers does not take issue with the contention that he will likely incur future medical expenses related to his alleged "permanent scarring and disfigurement" and "severe neck pain." (Docs. 1 at 18 and 1-1 at ¶ 12(b)). Nor does Sellers challenge or otherwise contest the reasonableness of a

---

[3] Sellers' Longshore compensation carrier paid approximately $4,158.95 (or approximately 35.6%) of the total amount billed by AOC for services rendered during this general time period. (Doc. 1-7, Medical and indemnity/benefit lien documents provided by John W. McClurkin, Counsel for Flexicrew Staffing, Inc.'s and its workers' compensation carrier, at p. 1 at "30DME" line).

$5,000.00 estimate of such future medical expenses in light of the amount of medical expenses previously incurred and the nature and extent of treatments that Sellers will likely need in the future.

Sellers also claims damages under a general category of being "otherwise injured or damaged." (Doc. 1-1 at ¶ 12(e)). He does not take issue with the contention that such damages includes lost wages. (Doc. 1 at 18-19). Lost wages are a proper element of damages in a negligence or wantonness action. *Cf.* Ex parte Courtney, 937 So.2d 1060, 1061, 1063-1064 (Ala. 2006) (concluding that a jury's damage award in a negligence action was inadequate where there was uncontroverted evidence of lost wages that exceeded the jury's verdict). Sellers was allegedly unable to work for more than seven (7) months, from his alleged accident on June 27, 2012, until early February 4, 2013. (Docs. 1-10, 7-8). Sellers was making approximately $19.80 per hour for a 40 hour work week – or $792.00 per week – at the time of his accident. (Doc. 1-11). Sellers' alleged lost wages, therefore, total at least $22,176.00 ($792.00 per week multiplied by 4 weeks in a month multiplied by 7 months).

"In a personal injury action, a plaintiff is entitled to recover both the value of the work time lost prior to trial ('lost earnings') and the value of the reduction in his ability to earn a living ('impairment of earning capacity')." Ensor v. Wilson By and Through Wilson, 519 So.2d 1244, 1273 (Ala. 1987). Sellers concedes that he has asserted a future lost wages claim by contending now that "[t]he fact that the Plaintiff is presently back at *greatly affects any future lost wage claims*." (Doc.7-1 at 14, emphasis added). Sellers has, in fact, only been allowed to return to work in a light-duty capacity. (Doc. 1-10, 7-

8).   In view of his occupation being that of a welder and his new light-duty restriction, Sellers could be entitled to future lost earnings and lost earnings capacity.   Alabama courts have recognized that, under appropriate circumstances, damages for permanent decreased earning capacity due to severe injury are allowable "without specific evidence of loss or decreased income or salary." Mackintosh Co. v. Wells, 118 So. 276 (Ala. 1928); *see also* Clark v. Container Corp. of America, Inc., 589 So.2d 184, 193-94 (Ala. 1991); Southern Ry. Co. v. Stallings, 268 Ala. 463, 107 So.2d 873, 884 (Ala. 1959). Bolttech's contends that, "[e]ven if the Plaintiff's earning capacity is reduced only a *de minimus* amount due to the alleged accident, for example by $1,000.00 per year, the Plaintiff is only 30 years old and will reasonably be expected to work at least another two decades." (Doc. 1 at 19).   The assertion that Sellers could legitimately claims such damages of at least $20,000.00 is not an impermissible inference from the facts alleged in the complaint and the supporting evidence.

The damages thus far discussed amount to $75,325.39.  In addition, it would be appropriate to add sums to cover the damages Sellers seeks for *past and future* pain and suffering and mental anguish (doc. 1-1 at ¶ 12(a), emphasis added), and for loss of enjoyment of life (doc. 1-1 at ¶ 12(b)).   Sellers does not challenge or otherwise contest Bolttech's contention that "a mental anguish [and pain and suffering] award of $35,000.00 should be deemed reasonably conservative based on the nature and severity of the Plaintiff's claimed physical injuries."  (Doc. 1 at 21).   Nor does Sellers challenge Bolttech's proposed $5,000.00 award for loss of enjoyment of life.  (Doc. 1 at 22).

Consequently, pursuant to the principles set forth, *inter alia,* in <u>Pretka</u>, <u>Williams</u>, and <u>Roe</u>, *supra*, the amount in controversy, as of the time this action was removed exceeds the jurisdictional threshold of this Court.  The estimates proposed above are not impermissibly speculative but are, instead, based on the specific claims as set forth in Sellers' complaint, and therefore "facially apparent from the complaint."  <u>Pretka</u>, 608 F.3d at 754, *quoting* <u>Williams</u>, 269 F.3d at 1319.

CONCLUSION

For the reasons set forth above, it is recommended that plaintiff's motion to remand (doc. 7) be **DENIED**.

**DONE** this __23rd____ day of May, 2013.

<u>/s/ Katherine P. Nelson</u>
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days[4]  after being served with a copy of the recommendation, unless a different time is established by order."  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Opposing party's response to the objection**.  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  FED. R. CIV. P. 72; SD ALA LR 72.4(b).

3.      **Transcript (applicable where proceedings tape recorded).**  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

        **DONE** this   23rd    day of May, 2013.

                                /s/ Katherine P. Nelson
                                **UNITED STATES MAGISTRATE JUDGE**

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).